1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT OF ARIZONA

8

9   Alan Marcel Sojka II,                    No. CV-13-1449-PHX-DGC (ESW)

10                      Petitioner,           **REPORT AND**
                                              **RECOMMENDATION**
11   v.

12   Charles L. Ryan, et al.,

13                      Respondents.

14

15

16   **TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT**

17   **JUDGE:**

18          On July 16, 2013, Alan Marcel Sojka II ("Petitioner") filed a Petition under 28

19   U.S.C. § 2254 for a Writ of Habeas Corpus (the "Petition") (Doc. 1).  On April 15, 2014,

20   Respondents filed their Answer (Doc. 26).  Petitioner filed a Reply (Doc. 36) on October

21   15, 2014.  The matter is deemed ripe for consideration.[1]

22          Petitioner raises six grounds and a number of sub-grounds for habeas relief in the

23   Petition.  The undersigned finds that the Petition is time-barred under the one-year statute

24   of limitations set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996

25

26

27   _____

28   [1] The case was reassigned to U.S. Magistrate Judge Eileen S. Willett on November
     14, 2014.

1   ("AEDPA"), 110 Stat. 1214.[2]  It is therefore recommended that the Petition be denied and

2   dismissed with prejudice.

3                                          **I.  BACKGROUND**

4           **A.  Convictions and Sentences**

5           On March 2, 2006, a jury found Petitioner guilty of the following crimes against

6   his son:  (i) seven counts of child abuse and (ii) first-degree murder.  (Doc. 17-1 at 2-6).

7   Petitioner's son was approximately five months old at the time of death.  (*Id*. at 18).

8   Petitioner is serving a life sentence for the first-degree murder conviction, which

9   commences upon completion of his sentence for the child abuse convictions.[3]  (Doc. 26-1

10  at 12-16).

11          **B.  Direct Appeal**

12          After his 2006 convictions and sentencing, Petitioner timely appealed to the

13  Arizona Court of Appeals.  (Doc. 17-1 at 9-62).  On December 11, 2007, the Arizona

14  Court of Appeals affirmed Petitioner's convictions, but found that the sentences for six of

15  the child abuse counts were based on the existence of a prior conviction that had not been

16  established.  (Doc. 17-1 at 64-71).  As such, the Court of Appeals vacated those sentences

17  and remanded the case to the trial court for resentencing.  (*Id*.).

18          At the May 20, 2008 resentencing proceeding, the trial court found that the State

19  proved beyond a reasonable doubt Petitioner's prior felony conviction.  (*Id*. at 81).  The

20  trial court sentenced Petitioner to the same terms of imprisonment as it ordered in 2006.

21

22          [2] The one-year statute of limitations for a state prisoner to file a federal habeas
23  petition is codified at 28 U.S.C. § 2244(d).

24          [3] The State sought the death penalty for the first-degree murder charge (Count 8).
     On March 7, 2006, a jury found the appropriate sentence to be life imprisonment.  (Doc.
25  26-3 at 320).  The trial court held the sentencing proceeding on April 21, 2006.  (Doc. 26-
     1 at 12).  The trial court sentenced Petitioner to 6.5 years for child abuse on Counts 1, 2,
26  and 6; 4.5 years for child abuse on Counts 4 and 5; and 2.25 years for child abuse on
     Count 7.  (*Id*. at 14-15).  Those sentences run concurrently, but consecutive to the 17 year
27  sentence imposed for child abuse on Count 3.  For Petitioner's first-degree murder
     conviction, the trial court sentenced Petitioner to life with the possibility of parole after
28  35 years.  (*Id*. at 15).

(*Id*. at 83).   On August 29, 2008, Petitioner's appellate counsel filed an *Anders* brief, which explained that counsel found no arguable question of law that is not frivolous and requested that the Court of Appeals search the record for fundamental error.  (*Id*. at 93).  Petitioner was given leave to file a supplemental brief, but did not do so.  (*Id*. at 98).

On December 2, 2008, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences.  (*Id*. at 97-102).  Petitioner did not seek further review in the Arizona Supreme Court.

### C.  Petition for Post-Conviction Relief

On January 30, 2008, before Petitioner's direct appeal of the resentencing concluded, Petitioner's attorney filed a notice of post-conviction relief ("PCR").  (Doc. 17-1 at 73-76).   In its July 18, 2008 minute entry, the trial court denied Petitioner's request for an extension of the deadline in which to file a PCR petition, which Petitioner requested on the grounds that the direct appeal had not concluded.  (*Id*. at 78).   The trial court was not inclined to "allow such an indefinite stay" and treated Petitioner's motion as a motion to dismiss with leave to re-file upon resolution of Petitioner's direct appeal. (*Id*.).

Petitioner filed a second notice of post-conviction relief ("PCR"), which is file-stamped January 6, 2009.   (*Id*. at 107-09).  The trial court appointed PCR counsel.  (*Id*. at 111-12).  Petitioner's counsel filed a PCR petition on December 4, 2009.  (*Id*. at 127-36). With the trial court's permission, Petitioner also filed a pro se PCR petition.  (*Id*. at 142, Doc. 17-2 at 8-100).  Both PCR petitions are collectively referred to herein as the "PCR Petition." On February 10, 2012, the trial court dismissed the PCR Petition.  (Doc. 17-2 at 130-41).

After dismissal of the PCR Petition, the trial court allowed Petitioner's attorney to withdraw and set March 30, 2012 as the filing deadline for a petition for review.  (*Id*. at 147-48).  Petitioner asked the trial court to extend the deadline in which to file a "motion for rehearing/reconsideration."  (*Id*. at 150-52).  The trial court granted the request and extended the filing deadline for a motion for rehearing/reconsideration to June 29, 2012.

(*Id*. at 165). The trial court cautioned Petitioner that "no further continuances will be granted absent a substantial showing of extraordinary circumstances." (*Id*.)

In a motion file-stamped June 26, 2012, Petitioner requested a further time extension to file a motion for rehearing. (Doc. 17-2 at 168-70). When the trial court took no action (*Id*. at 172), Petitioner re-filed his request on two occasions. (*Id*. at 174-76; 180-82). On August 7, 2012, the trial court issued an order explaining that it had "explicitly cautioned [Petitioner] 'that no further continuances will be granted absent a substantial showing of extraordinary circumstances.'" (*Id*. at 185). The court found that Petitioner "failed to make the required showing of extraordinary circumstances to justify a further extension of time." (*Id*.). Based on this finding, the court ordered that as Petitioner "failed to meet the extended deadline for submission of a motion for rehearing under Rule 32.9, that relief is no longer available to him. The Court's February 10, 2012 ruling dismissing [the PCR Petition] is confirmed." In addition, the trial court ordered that the "Court's Order herein shall serve as a 'final decision' for purposes of Rule 32.9(c)." (*Id*.). As explained in more detail in Section III(A)(2) below, Petitioner failed to timely petition the Arizona Court of Appeals for review of the trial court's August 7, 2012 order.

**D. Petition for Special Action**

On May 2, 2013, Petitioner filed a "Petition for Special Action (Re: Denial to File Petition for Review when Petition was <u>Never</u> Untimely)" in the Arizona Court of Appeals. (Doc. 17-6 at 44-81). The Court of Appeals declined to accept jurisdiction of the Petition for Special Action. (*Id*. at 85). On May 30, 2013, Petitioner filed a "Petition for Review of a Special Action Decision of the Court of Appeals" in the Arizona Supreme Court. (*Id*. at 88-134). Petitioner filed the Petition (Doc. 1) seeking habeas relief in the U.S. District Court on July 16, 2013. On October 29, 2013, the Arizona Supreme Court denied review of Petitioner's Petition for Review. (Doc. 19-1 at 2).

## II.  FEDERAL HABEAS LAW

There are a number of bars that may prevent a federal court from reviewing the merits of claims alleged in a federal habeas petition.  Respondents argue that the Petition is time-barred under AEDPA.  Respondents also argue that the majority of Petitioner's claims are procedurally barred under the exhaustion-of-state-remedies and procedural default doctrines.  The undersigned finds that the Petition is time-barred and thus recommends that the Court deny and dismiss the Petition. Because the Petition is time-barred, the undersigned does not address Respondents' alternative affirmative defenses.

Under AEDPA, a state prisoner must file his or her federal habeas petition within **one year** of the latest of:

> 1. The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> 2. The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from filing by the State action;
>
> 3. The date on which the right asserted was initially recognized by the United States Supreme Court, if that right was newly recognized by the Court and made retroactively applicable to cases on collateral review; or
>
> 4. The date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *see also Hammerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007).  The one-year limitations period, however, does not necessarily run for 365 consecutive days as it is subject to tolling.

Statutory tolling is available under AEDPA, which provides that the limitations period is tolled during the "time during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *Roy v. Lampert*, 465 F.3d 964, 968 (9th Cir. 2006)

1    (limitations period is tolled while the state prisoner is exhausting his or her claims in state

2    court and state post-conviction remedies are pending) (citation omitted).

3        AEDPA's statute of limitations is also subject to equitable tolling.  *Holland v.*

4    *Florida*, 560 U.S. 631, 645 (2010) ("Now, like all 11 Courts of Appeals that have

5    considered the question, we hold that § 2244(d) is subject to equitable tolling in

6    appropriate cases.").    Yet equitable tolling is applicable only "if extraordinary

7    circumstances beyond a prisoner's control make it impossible to file a petition on time."

8    *Roy*, 465 F.3d at 969 (citations omitted); *Gibbs v. Legrand*, 767 F.3d 879, 888 n.8 (9th

9    Cir. 2014).   A petitioner must show (i) that he or she has been pursuing his rights

10   diligently and (ii) some extraordinary circumstances stood in his or her way.  *Pace v.*

11   *DiGuglielmo,* 544 U.S. 408, 418 (2005); s*ee also Waldron-Ramsey v. Pacholke*, 556 F.3d

12   1008, 1011 (9th Cir. 2009); *Roy*, 465 F.3d at 969.

13       Calculating the timeliness of a habeas petition can become complicated in a case

14   where the statute of limitations stops and restarts on multiple occasions due to the

15   application of statutory and/or equitable tolling.  Below is one method for making the

16   calculation:

17       1. Determine the total number of days between the date the limitations period

18   commenced and the date the federal habeas petition was filed.

19       2. Determine the total number of days the limitations period was statutorily and/or

20   equitably tolled.

21       3. Finally, subtract the figure determined in step two from the figure determined in

22   step one.  This calculation denotes the number of days it took a petitioner to file the

23   federal habeas petition, excluding tolled days.  If the number is 365 days or less, then the

24   petition is timely.  If the number is more than 365 days, then the petition is untimely.[4]

25   _____

26   [4] The exception to this rule is where the statute of limitations expires on a
     Saturday, Sunday, or legal holiday.  Pursuant to Rule 12 of the Rules Governing Section

27   2254 Cases and Fed. R. Civ. P. 6(a)(1)(C), the habeas petition would be due the next day
     that is not a Saturday, Sunday, or legal holiday.  In such situations, a habeas petition may

28   be timely even though it is filed more than 365 days from the date the limitations period

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.  ANALYSIS OF THE PETITION

#### A.  The Petition is Time-Barred by AEDPA

##### 1.  The Statute of Limitations Commenced on January 3, 2009

Petitioner's convictions became final on January 2, 2009.[5]  (Doc. 17-1 at 97-102). Therefore, unless statutory or equitable tolling applies, Petitioner's one-year deadline to file a habeas petition expired on January 3, 2010, making the Petition filed on July 16, 2013 several years late.  While Respondents concede that the limitations period was statutorily tolled while the PCR Petition was pending, the parties dispute the dates during which the PCR Petition was "pending."  Petitioner also argues that the Court should find that the limitations period was equitably tolled.

##### 2.  Statutory Tolling

A statutory tolling analysis under AEDPA begins by determining whether the collateral review petition was "properly filed."  This is because statutory tolling does not apply to collateral review petitions that are not "properly filed."  *Pace v. DiGuiglielmo*, 544 U.S. 408 (2005); 28 U.S.C. § 2244(d)(2).  A collateral review petition is "properly filed" when its delivery and acceptance are in compliance with state rules governing filings.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Orpiada v. McDaniel*, 750 F.3d 1086, 1089 (9th Cir. 2014) (court looked to Nevada state filing requirements in determining whether habeas petitioner's PCR petition was a "properly filed" application that is eligible for tolling).  This includes compliance with filing deadlines.  An untimely state collateral review petition is not "properly filed."  *Pace,* 544 U.S. at 417 (holding that

---

commenced.

[5] Pursuant to *Gonzalez v. Thaler*, 132 S.Ct. 641, 654 (2012), AEDPA's statute of limitations commences upon the expiration of the time for seeking review in a state's highest court.  Ariz.R.Crim.Proc. 31.19(a) provides that "[w]ithin 30 days after the filing of a decision . . . any party may file with the clerk of the Court of Appeals a petition for review by the Supreme Court."  The Arizona Court of Appeals' affirmed Petitioner's convictions and sentences on December 2, 2008.  Thirty days after December 2, 2008 is Thursday, January 1, 2009.  However, because January 1 is a legal holiday, Petitioner's deadline to seek review in the Arizona Supreme Court was extended to the next day that is not a Saturday, Sunday, or legal holiday, which was Friday, January 2, 2009.  Ariz. R. Crim. P. 1.3.

1   "time limits, *no matter their form,* are 'filing' conditions," and that a state PCR petition is

2   therefore not "properly filed" if it was rejected by the state court as untimely).

3          Under Ninth Circuit case law, untimely appeals of a lower state court's decision

4   regarding a collateral review petition are also not "properly filed" for statutory tolling

5   purposes.  This means that the time between a lower state court's ruling on a collateral

6   review petition and an appeal to a higher state court is not statutorily tolled if the appeal

7   is deemed untimely.  *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Thorson v. Palmer*, 479

8   F.3d 643, 646 (9th Cir. 2007); *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2003)

9   ("Under *Pace*, if a state court denies a petition as untimely, none of the time before or

10  during the court's consideration of that petition is statutorily tolled.").

11         If the collateral review petition was "properly filed," then the Court must

12  determine the dates it was "pending."  In Arizona, a PCR petition becomes "pending" as

13  soon as the notice of PCR is filed.  *Isley v. Arizona Department of Corrections*, 383 F.3d

14  1054, 1055-56 (9th Cir. 2004) ("The language and structure of the Arizona

15  postconviction rules demonstrate that the proceedings begin with the filing of the

16  Notice.").  It remains "pending" until it "has achieved final resolution through the State's

17  post-conviction procedures."  *Carey v. Saffold*, 536 U.S. 214, 220 (2002).   This includes

18  "[t]he time between (1) a lower state court's adverse determination, and (2) the prisoner's

19  filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under

20  state law."  *Evans*, 546 U.S. at 191.

                    **i.   The Statute of Limitations was Tolled from January 6, 2009
                          through February 10, 2012**

21

22

23         Here, the one-year statute of limitations began running on January 3, 2009.

24  Although Petitioner filed his first notice of PCR before that date, the trial court dismissed

25  the PCR notice the same day it was filed.  (Doc. 17-1 at 78).  Thus, the first PCR notice

26  had no statutory tolling effect.  On January 6, 2009, Petitioner filed a second notice of

27

28

1    PCR. [6]  (*Id.* at 107-09).  The trial court accepted the notice and the AEDPA limitations

2    period was therefore suspended as of January 6, 2009.  Three days, however, ran off the

3    limitations "clock," leaving Petitioner with 362 days remaining to file a federal habeas

4    petition.

5         On February 10, 2012, the trial court denied the PCR Petition.  (*Id.* at 130-41).

6    Respondents concede that the limitations period was tolled until February 10, 2012.

7    Petitioner disputes Respondents' assertion that the limitations period restarted on

8    February 11, 2012.  Petitioner argues that the limitations period extended much beyond

9    this date.  In support of this argument, Petitioner points to (i) the trial court's August 7,

10   2012 minute entry, which stated that it was a "final decision"; (ii) the trial court's

11   September 24, 2012 minute entry, which denied Petitioner's "Motion to Set Aside Final

12   Decision <u>and</u> to Consider/Permit Defendant's Motion for Rehearing <u>and</u> Extension of

13   Time for Petition for Review"; (iii) Petitioner's attempt to file a petition for review in the

14   Arizona Court of Appeals; and (iv) Petitioner's Petition for Special Action filed in the

15   Arizona Court of Appeals.  (*See* Doc. 36 at 8-10, 19, 27-28, 36-37).

16                          **ii.  Trial Court's August 7, 2012 Minute Entry**

17        In April 2012, Petitioner requested that the trial court extend the deadline for filing

18   a motion for rehearing/reconsideration.  (Doc. 17-2 at 150-52).  In its May 7, 2012

19

20   _____

21   [6] January 6, 2009 is the date the clerk of court filed the PCR notice.  Petitioner
     argues that under the "prison mailbox rule," the filing date is actually December 31, 2008
22   as that is the date Petitioner allegedly delivered the PCR notice to prison authorities.
     (Doc. 36 at 36).  While the federal "prison mailbox rule" may apply for purposes of
23   calculating tolling under 28 U.S.C. § 2244(d), the PCR notice does not contain a proof of
     service indicating when Petitioner delivered it to prison officials for mailing.  *See*
24   *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (to meet the initial burden of
     proving a timely filing under the prison mailbox rule, an inmate must, at a minimum,
25   provide a sworn declaration or notarized statement indicating the date the inmate gave the
     document to prison officials for mailing unless more probative evidence, such as the
26   prison mail log, is available).  Therefore, the undersigned has used the file-stamped date
     of January 6, 2009 for purposes of calculating the statute of limitations' commencement
27   date.  The additional three days of tolling that using December 31, 2008 as the PCR
     notice's filing date would provide Petitioner would not alter the ultimate conclusion that
28   the Petition is time-barred.  Section III(A)(4) explains that the Petition is over 160 days
     late.

1  minute entry, the trial court granted the request and extended the filing deadline to June
2  29, 2012.  (Doc. 17-5 at 146).  On June 26, 2012, Petitioner filed a "Motion for Extension
3  of Time <u>and</u> for Copies of the Record on Appeal which are Not in Defendant's
4  Possession."  (Doc. 17-2 at 168-70).  Petitioner filed two similar motions for an extension
5  that are file-stamped July 16, 2012 and August 1, 2012.  (*Id*. at 174-75, 180-82).

6        On August 7, 2012, the trial court denied all three motions for extension,
7  explaining that its May 7, 2012 order "explicitly cautioned Defendant 'that no further
8  continuances will be granted absent a substantial showing of extraordinary
9  circumstances.'"  (Doc. 17-5 at 151).   The Court found that Petitioner "failed to make
10 the required showing of extraordinary circumstances sufficient to justify a further
11 extension of time."  (*Id*.).   The trial court ordered that as Petitioner failed to meet the
12 extended deadline for filing a motion for rehearing, that "relief is no longer available" to
13 Petitioner and stated that its "February 10, 2012 ruling dismissing [the PCR Petition] is
14 confirmed."   Lastly, the Court ordered that "the Court's Order herein shall serve as a
15 'final decision' for purposes of Rule 32.9(c)."  (*Id*.).

16       Petitioner argues that because the trial court stated that its August 7, 2012 ruling is
17 a "final decision," the statutory tolling period ran until at least August 7, 2012 as the
18 ruling shows that the PCR Petition was still "pending."  (Doc. 36 at 8-9).   Yet an
19 untimely request is not "properly filed."  *See Thorson*, 479 F.3d at 646; *Bonner*, 425 F.3d
20 at 1149.   Petitioner failed to timely submit a motion for rehearing.   Therefore, the
21 limitations period was not statutorily tolled between the date the trial court dismissed the
22 PCR Petition (February 10, 2012) and the date the trial court ruled that Petitioner is not
23 entitled to a further extension of time to file a motion for rehearing (August 7, 2012).

24       Moreover, the trial court stated that its August 7, 2012 order was a final decision
25 *for purposes of Rule 32.9(c)*.  (Doc. 17-5 at 151).  Rule 32.9(c) of the Arizona Rules of
26 Criminal Procedure provides that a defendant has 30 days from the date of a trial court's
27 decision regarding a PCR petition or motion for rehearing to file a petition for review in
28 the Arizona Court of Appeals.   Thus, the August 7, 2012 minute entry clarified that

1    Petitioner had 30 days to file a petition for review regarding the trial court's order that
2    Petitioner is not entitled to a rehearing as Petitioner failed to meet the extended filing
3    deadline.  Ruling that a petitioner's request is untimely and affirming a prior dismissal
4    does not make a collateral review petition "pending" after the petition was initially
5    dismissed.  *See Thorson*, 479 F.3d at 646; *Bonner*, 425 F.3d at 1149.

6         For the foregoing reasons, the undersigned finds that the trial court's August 7,
7    2012 minute entry did not have any statutory tolling effect on AEDPA's statute of
8    limitations.

9                    **iii.  Trial Court's September 24, 2012 Minute Entry**

10        In September 2012, Petitioner filed a "Motion to Set Aside Final Decision <u>and</u> to
11   Consider/Permit Defendant's Motion for Hearing <u>and</u> Extension of Time for Petition for
12   Review."  (Doc. 17-3 at 3-8).  Petitioner also contemporaneously filed a "Motion for
13   Rehearing (Reconsideration) and Motion to Exceed Page Limit of Rule 32.5 for Post-
14   Conviction Relief (Oral Arguments Requested)."  (*Id*. at 9-101, Doc. 17-4).

15        On September 24, 2012, the trial court issued an order "denying [Petitioner's]
16   motion to set aside final decision," but extended Petitioner's time to file a petition for
17   review until October 31, 2012.  (Doc. 17-5 at 2).  The order was amended *nunc pro tunc*
18   "to include the denial of [Petitioner's] Motion for Rehearing (Reconsideration) and
19   Motion to Exceed Page Limit of Rule 32.5 for Post-Conviction Relief (Oral Arguments
20   Requested)."  (*Id*. at 4).  Petitioner argues that the trial court's September 24, 2012
21   minute entry, as amended by its October 17, 2012 minute entry, had the effect of tolling
22   the period of time after the trial court's August 7, 2012 minute entry.  Petitioner explains
23   that:

24              Clearly, the court never striked these pleadings and never
                stated that either of them was ever untimely in both of the
25              foregoing order, and in fact, the court specifically '<u>reviewed</u>'
                and took them 'in consideration' which can be construed as
26              '<u>pending</u>' AND further tolls the limitation period of AEDPA.
27              . . . . Clearly, this timely tolling gives Petitioner an extra 49

28

- 11 -

days (Aug. 7, 2012 through to Sept. 24, 2012), [7] on top of the tolling from Feb. 10, 2012 through to Aug. 7, 2012, due to his properly pending pleadings that qualify as collateral review pursuant to the Supreme Court in <u>Wall v. Kholi,</u> 131 S.Ct. 1278, _____ (2011).

(Doc. 36 at 19).

The undersigned does not find that the trial court's September 24, 2012 minute entry, as amended, tolled the statute of limitations because it did not pertain to a "properly filed" PCR petition or other collateral relief.  The trial court ruled in its August 7, 2012 minute entry that relief pursuant to a motion for rehearing was no longer available to Petitioner.  The proper recourse to address the ruling was to timely file a petition for review in the Arizona Court of Appeals, which Petitioner failed to do as discussed in the following section.  Even if Petitioner was entitled to an additional 48 days of tolling, the Petition would still be untimely by 112 days.[8]

### iv.  Untimely Petition for Review

Petitioner received numerous extensions of time to file a petition for review of the trial court's August 7, 2012 minute entry.  In its November 5, 2012 order, the trial court extended the deadline until November 30, 2012 and warned Petitioner that no additional extensions of time would be granted "absent a substantial showing of extenuating circumstances."  (Doc. 17-5 at 156).  Immediately before the November 30 deadline, Petitioner filed another request for an extension.  (*Id.* at 14-17).  When the court took no action, Petitioner re-filed his request.  In February 2013, before the trial court ruled on the request, Petitioner filed a petition for review in the Arizona Court of Appeals.  (*Id.* at 28-128).  The petition for review was 100 pages, which is five times the maximum page limit.  The Arizona Court of Appeals struck the petition for review for exceeding the page limit and gave Petitioner until April 11, 2013 to file a petition for review that is in

---

[7] The number of days between August 7, 2012 and September 24, 2012 is 48, not 49 as Petitioner has calculated.  *See* Fed. R. Civ. P. 6(a)(1).

[8] Section III(A)(4) below explains that the Petition was filed 160 days late.

1    compliance with the rules.  (Doc. 17-6 at 4).

2        Before Petitioner re-filed his petition for review, the State filed a motion in the

3    Arizona Court of Appeals to preclude the petition for review, asserting that it was

4    untimely.  (*Id*. at 14-16).  *See State v. Pope*, 635 P.2d 846 (Ariz. 1981) (the Arizona

5    Court of Appeals does not have jurisdiction over an untimely petition for review).  The

6    Court of Appeals granted the State's motion and indicated that the trial court may allow a

7    late filing "if it finds that petitioner was not responsible for the untimely filing" after

8    being presented with proper evidence.  (*Id*. at 29).

9        In March 2013, Petitioner filed a "Motion to Permit Late Filing of his Petition for

10   Review."  (*Id*. at 32).  The trial court denied Petitioner's motion on April 15, 2013.  (*Id*.

11   at 42).

12       Because the February 2013 Petition for Review was untimely and did not comply

13   with the rules, it was not "properly filed" and has no tolling effect on AEDPA's statute of

14   limitations.  The statute of limitations therefore continued to run after the trial court

15   issued its orders dated February 10, 2012, August 7, 2012, and September 24, 2012.

16                               **v.  Petition for Special Action**

17       On May 2, 2013, Petitioner filed a "Petition for Special Action (Re: Denial to File

18   Petition for Review when Petition was <u>Never</u> Untimely)" in the Arizona Court of

19   Appeals.  (Doc. 17-6 at 44).  The Court of Appeals declined to accept jurisdiction of the

20   Petition for Special Action.  (*Id*. at 85).  On May 30, 2013, Petitioner filed a "Petition for

21   Review of a Special Action Decision of the Court of Appeals" in the Arizona Supreme

22   Court.  (*Id*. at 88).  On October 29, 2013, the Arizona Supreme Court denied review.

23   (Doc. 19-1 at 2).

24       A petition for special action has no tolling effect on AEDPA's statute of

25   limitations.  *See Hardiman v. Galaz*, 58 F.App'x. 708, 710 (9th Cir. 2003).  Even if the

26   Petition for Special Action did constitute a collateral review petition, it was filed after the

27   statute of limitations expired on February 6, 2013 as explained in Section III(A)(4)

28   below.  Once the statute of limitations has run, subsequent collateral review petitions do

1  not "restart" the clock.  *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v.*

2  *Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).  For the above reasons, the undersigned

3  finds that the Petition for Special Action has no statutory tolling effect on the limitations

4  period in Petitioner's case.

5  **3. Equitable Tolling**

6  The standard for equitable tolling of the one-year habeas limitations period is a

7  very high bar, and is reserved for rare cases.  *Yow Ming Yeh v. Martel*, 751 F.3d 1075

8  (9th Cir. 2014); *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002) ("Indeed, 'the

9  threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the

10  exceptions swallow the rule.'") (quoting *United States v. Marcello*, 212 F.3d 1005, 1010

11  (7th Cir. 2000).  Equitable tolling is only appropriate when external forces, such as

12  "abandonment" by the petitioner's counsel, the unavailability of a prison library, or a

13  petitioner's mental disability, rather than a petitioner's lack of diligence, account for the

14  failure to file a timely habeas action.  *See Gibbs,* 767 F.3d at 886–87; *Sossa v. Diaz*, 729

15  F.3d 1225, 1236 (9th Cir. 2013).  It is a petitioner's burden to establish that equitable

16  tolling is warranted.[9] *Pace*, 544 U.S. at 418; *Rasberry v. Garcia*, 448 F.3d 1150, 1153

17  (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of

18  limitations on habeas petitions, but the petitioner bears the burden of showing that

19  equitable tolling is appropriate.").

20  As mentioned previously, a petitioner seeking equitable tolling must establish that:

21  (i) he or she has been pursuing his or her rights diligently and (ii) that some extraordinary

22

---

23  [9] Petitioner argues that under *Holland v. Florida*, 130 S.Ct. 2549, 2566 (2010),
there is a rebuttable presumption in favor of equitable tolling.  (Doc. 36 at 11).  Yet the
24  presumption applied in *Holland* was not one that equitable tolling should be found in an
individual case, but that a presumption that a given statute of limitations was subject to
25  equitable tolling at all.  After considering the presumption, the U.S. Supreme Court held
that AEDPA's statute of limitations may be tolled for equitable reasons.  *Holland*, 130
26  S.Ct. at 2550.

27

28

circumstances stood in his or her way.  A petitioner must also show that the "extraordinary circumstances" were the "but-for and proximate cause of his [or her] untimeliness."  *Allen v. Lewis,* 255 F.3d 798, 800 (9th Cir.2001) (per curiam); *see also Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009).

Liberally construing the Petition and Reply, Petitioner primarily bases his equitable tolling argument on (i) the trial court's denial of Petitioner's motions for extension of the deadlines to file a motion for rehearing and petition for review; (ii) the trial court's failure to provide Petitioner with copies of transcripts and the record; (iii) the trial court's alleged recharacterization of his motion for rehearing/reconsideration; (iv) Petitioner's pro se status and lack of legal knowledge; and (v) inadequate legal assistance in prison.  In Petitioner's words:

> [The] relevant time period of events included an unusual set of facts which amounted to a clerk and the court's continuous/ongoing miscommunication within the court in addressing/handling Petitioner's several motions filed during this interval.  This was entirely beyond Petitioner's control.  Although Petitioner exercised his rights diligently, the court's miscommunication within itself created several misleading minute entries sent to Petitioner making it impossible for him to reasonably timely file within the extensions in an extraordinary way based on the fact that Petitioner had to constantly file numerous motions to clarify extensions timely filed and rulings therefrom.  That, in effect, took away critical preparation and Petitioner's full undivided attention to the Motion for Rehearing.  All of these circumstances became a severe obstacle that of which, but for, Petitioner would have timely filed the Rehearing motion exceptionally sooner before 6/29/2012.  Further, the court never honored Petitioner's request for the transcripts or portions of the record, thus compounding the extraordinary circumstance and its legal significance of possible impediment and equitable tolling grounds.

(Doc. 36 at 12).

> . . . .

> Petitioner's motions to the relevant issues for Rehearing/Reconsideration were clearly denied and/or

recharacterized in an arbitrary decision when in fact Petitioner made good faith allegations warranting further evidentiary/record development. The court's recharacterizing and denials was an abuse of discretion under the circumstances, which now would, if true, entitled Petitioner to statutory tolling of AEDPA and/or equitable tolling in accordance with <u>Whalen/Hunt</u>, supra, with a hearing to ensure development of an adequate factual record.

(*Id*. at 13).

. . . .

Had the state courts' [sic] not unreasonably dismissed the petition for review or unreasonably denied the extensions at the eleventh or past the twelvth [sic] hour and/or that the factual premise was incorrect by clear and convincing evidence, Petitioner would have invoked one complete round of the state's appellate review process and tolled AEDPA's statute of limitations for nearly an additional 12 months.

(*Id*. at 24).

. . . .

In the last 8-10 years, this Petitioner who never graduated high school and followed into the family "trade" of floor covering involving at times dangerous exposure and contact with toxic chemicals and materials potentially causing harmful effects on his brain (cf. <u>Caro v. Caderon</u>, 165 F.3d 1223, 1226 (1999)), has struggled with trying to comprehend/learn this new and foreign-like language called law, its legal development and its relentless plethora of legal standards.

(*Id*. at 32).

. . . .

The paralegal refused to help Petitioner in all his requests . . . . Without any access to research case law decisions based on the complexity of materials interpreting AEDPA's statute of limitations § 2244, equitable tolling can be justified. See <u>Whalem/Hunt v. Early</u>, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc); <u>Roy v. Lampert</u>, 465 F.3d 964, 969 (9th Cir. 2006) . . . . The state's attorneys (opposing party) have access to a vast resource of law library, internet, Lexis Nexis, shepardizing, etc. Clearly, Petitioner is undermined and out-

> gunned to a severe disadvantage who has no such arsenal to
> combat with a zealous adversary challenge.

(*Id.* at 34).

Petitioner has not proffered any extraordinary circumstance that would justify equitable tolling or demonstrated that an external impediment hindered the diligent pursuit of his rights.  Although Petitioner argues the trial court impeded his ability to timely file a motion for rehearing, the record is clear.  In April 2012, Petitioner requested that the trial court extend the deadline to file a motion for rehearing.  (Doc. 17-2 at 150-52).  On May 7, 2012, the trial court granted his request and set a deadline of June 29, 2012.  (Doc. 17-5 at 146).  The trial court explicitly stated that no further extension would be granted absent a showing of extraordinary circumstances.   (*Id.*). While Petitioner disputes the trial court's finding that Petitioner was not entitled to a further extension, "[f]ederal habeas courts lack jurisdiction to review state court applications of state procedural rules."  *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1998); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation).

Likewise, Petitioner failed to meet the extended deadline in the Arizona Court of Appeals for review of the trial court's August 7, 2012 ruling that Petitioner was not entitled to a rehearing.  Although Petitioner disputes the trial court's denial of a further extension, the dispute is not reviewable in the federal habeas proceeding.  *See Poland*, 169 F.3d at 584; *Estelle*, 502 U.S. at 67-68.

To support his argument that the trial court's alleged "recharacterization" of Petitioner's motion warrants equitable tolling, Petitioner cites to *Castro v. United States*, 540 U.S. 375 (2003).  *Castro* has no application to this case.  In *Castro*, the U.S. Supreme Court held that a federal district court must (i) notify a pro se litigant that it intends to

recharacterize a pleading as a request for habeas relief under 28 U.S.C. § 2255 and (ii) warn the litigant that the recharacterization means that any subsequent Section 2255 motion will be subject to the restrictions on "second or successive" motions.[10]  *Id.* at 383. A federal district court must also give the litigant an opportunity to withdraw or amend the motion so that it contains all the Section 2255 claims the litigant desires to pursue. *Id.*  Even if the trial court did "recharacterize" Petitioner's motion, Petitioner does not establish that it was an extraordinary circumstance that was the proximate cause of Petitioner's untimeliness.

The trial court's inaction on Petitioner's request for transcripts does not constitute grounds for equitable tolling.  The Supreme Court has held that criminal defendants have no constitutional right to free transcripts on collateral review. *See United States v. MacCollom*, 426 U.S. 317, 323–24 (1976).  Rule 32.4(d) of the Arizona Rule of Criminal Procedure provides that "[i]f the trial court proceedings have not been previously transcribed" a defendant may file a request for their preparation. The trial court then reviews the request and orders "only those transcripts prepared that it deems necessary to resolve the issues to be raised in the petition." Ariz. R. Crim. P. 32.4(d).  The trial and sentencing transcripts in Petitioner's case were prepared on direct appeal, as evidenced by the opening brief filed by Petitioner's appellate counsel.  (Doc. 17-1 at 9-62).

Finally, Petitioner's pro se status, indigence, limited legal resources, and alleged ignorance of the law alone do not constitute extraordinary circumstances justifying equitable tolling.  *See, e.g., Rasberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); *Johnson v. United States,* 544 U.S. 295, 311

---

[10]  A petitioner who seeks to file a "second or successive" Section 2255 motion must first obtain from the appropriate federal court of appeals an order authorizing the district court to consider the application.  28 U.S.C. § 2244(b)(3)(A). A three-judge panel of the court of appeals reviews the application and determines whether the petitioner has made a prima facie showing that the application meets the statutory exceptions set forth in 28 U.S.C. § 2255(h).

(2005) ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness.").

As Petitioner has not met his burden of showing that extraordinary circumstances made it impossible for him to file a timely federal petition, it is not necessary to address the diligence element of his equitable tolling claim. *Rasberry*, 448 F.3d at 1153 ("We need not address the diligence element [of petitioner's equitable tolling claim] because we conclude that no extraordinary circumstance stood in [the petitioner's] way."). For the foregoing reasons, Petitioner is not entitled equitable tolling.

### 4.  The Statute of Limitations Expired on February 6, 2013, Meaning the Petition is 160 Days Late

In calculating the timeliness of a petition, the undersigned has used the methodology explained in Section II above.  The period between the date the limitations period commenced and the date Petitioner filed the Petition is 1,655 days (January 3, 2009 through July 16, 2013).  The total number of days AEDPA's statute of limitations was tolled is 1,130 (from January 6, 2009 through February 10, 2012).  The difference between those two figures is 525 days, which denotes that it took Petitioner 525 days to file the Petition.  This is 160 days over the 365 day statute of limitation period.  In other words, the statute of limitations expired on February 6, 2013 (calculated by subtracting 160 days from the Petition's July 16, 2013 filing date).[11]   The Petition is therefore untimely.  Accordingly, the undersigned recommends that the Court deny and dismiss the Petition.

### B.  The Petition's Untimeliness is Not Excused by the Actual Innocence Gateway/Miscarriage of Justice Exception

In *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1931-34 (2013), the Supreme Court

---

[11]   Alternatively, the Court may calculate the February 6, 2013 statute of limitations expiration date by adding 362 days to February 10, 2012, the end of the statutory tolling period.  As explained in Section III(A)(2)(i), the limitations period ran three days before tolling commenced on January 6, 2009.

announced an equitable exception to AEDPA's statute of limitations.  The Court held that the "actual innocence gateway" to federal habeas review that was applied to procedural bars in *Schlup v. Delo*, 513 U.S. 298, 327 (1995) and *House v. Bell*, 547 U.S. 518 (2006) extends to petitions that are time-barred under AEDPA.  The "actual innocence gateway" is also referred to as the "*Schlup* gateway" or the "miscarriage of justice exception."

Under *Schlup*, a petitioner seeking federal habeas review under the miscarriage of justice exception must establish his or her factual innocence of the crime and not mere legal insufficiency.  *See Bousley v. U.S.*, 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup,* 513 U.S. at 324. *See also Lee v. Lampert,* 653 F.3d 929, 945 (9th Cir.2011); *McQuiggin,* 133 S.Ct. at 1927 (explaining the significance of an "[u]nexplained delay in presenting new evidence").  A petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *McQuiggin*, 133 S.Ct. at 1935 (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).  Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne,* 223 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v. Thomas,* 523 U.S. 538, 559 (1998)).

Here, Petitioner does not explicitly argue that the miscarriage of justice exception should be applied if the Court finds that the Petition is time-barred.  Even if the Petition and Reply are liberally construed to include such a claim,[12] Petitioner does not proffer any new evidence to support actual innocence.  For example, while Petitioner asserts that he "insisted and directed trial counsel to investigate, interview and secure [Petitioner's]

---

[12] For instance, in his Reply (Doc. 36), Petitioner states that the record "shows a progressive pattern and diligence as shown in his filings of motions that, in most circumstances, only an innocent prisoner (such as Petitioner) who knows beyond a doubt he was wrongfully convicted would pursue."  (Doc. 36 at 32).

defense from . . . important critical witnesses" (Doc. 1 at 10), Petitioner merely presents self-serving and speculative statements about the testimony such witnesses would have offered. (*Id*. at 10-13). This is insufficient to establish a *Schlup* gateway claim. *See Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013) ("we have denied access to the *Schlup* gateway where a petitioner's evidence of innocence was merely cumulative or speculative or was insufficient to overcome otherwise convincing proof of guilt"). The undersigned does not find that the record and pleadings in this case contain "evidence of innocence so strong that [the Court] cannot have confidence in the outcome of the trial." *McQuiggin*, 133 S.Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316). Accordingly, the undersigned recommends that the Court find that Petitioner cannot pass through the *Schlup* gateway to excuse the untimeliness of the Petition.

## C. Petitioner's Additional Requests

### 1. Request for an Evidentiary Hearing

The Ninth Circuit has held that a habeas petitioner "should receive an evidentiary hearing when he makes 'a good-faith *allegation that would, if true*, entitle him to equitable tolling.'" *Roy*, 465 F.3d at 969 (quoting *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003) (emphasis in original). In his Reply, Petitioner cites to *Roy* and asserts that "[b]ecause Petitioner has made good faith allegations that would, if true, entitle him to equitable tolling, he should receive an evidentiary hearing."

In *Roy*, the Ninth Circuit held that an evidentiary hearing was warranted regarding two habeas petitioners' equitable tolling claims as the petitioners (i) sufficiently presented allegations indicating diligence and (ii) alleged that they were unaware of AEDPA due to a deficient/non-existent law library. *Id*. at 974-75. Here, Petitioner does not allege that he did not have access to AEDPA or any materials interpreting AEDPA. In fact, Petitioner's April 22, 2013 letter to the District Court's Clerk of Court shows that Petitioner was aware of AEDPA. (Doc. 36-1 at 42-43). In the letter, Petitioner states "I believe I have been diligent for equitable tolling purposes as stated in Holland v. Florida, 130 S.Ct. 2549, 2563-65 (2010). Currently, I'm unaware of how many days I have left in

my 'one year' to file a habeas corpus petition in Federal Court." (*Id.* at 42).  Petitioner's miscalculation of when the limitations period expired does not constitute an "extraordinary circumstance" warranting equitable tolling.  *See Rasberry*, 448 F.3d at 1154 (a habeas petitioner's incorrect calculation of the limitations period does not warrant equitable tolling); *see also Alexander v. Schiro*, 312 F. App'x. 972, 976 (9th Cir. 2009) ("Ultimately [the petitioner] made an incorrect interpretation of the statute and miscalculated the limitations period.  This does not amount to an 'extraordinary circumstance' warranting equitable tolling.").

     For the reasons discussed in Section (III)(A)(3), the undersigned finds that Petitioner has not made any allegations that, if true, would warrant equitable tolling.  Accordingly, the undersigned recommends that the Court deny Petitioner's request for an evidentiary hearing regarding his equitable tolling claim.

### 2.  Petitioner's Request to "Renew" Certain Motions/Pleadings

     In his Reply (Doc. 36 at 48), Petitioner seeks a "renewal" of the following motions/pleadings previously filed and considered by the Court:

> 1.  "Motion for Appointment of Counsel with Attachments in Support for Record" (Doc. 8);
>
> 2.  "Motion for Investigative Services and to Conduct Discovery" (Doc. 14);
>
> 3.  "Petitioner's Reply to Respondent's Objection to Motion for Investigative Services and to Conduct Discovery" (Doc. 16);
>
> 4.  "Motion to Obtain Copies of Pertinent Documents/Portions of the Record without Cost" (Doc. 18); and
>
> 5.  "Amendment in Addition to Motion to Obtain Copies of Pertinent Documents/Portions of the Record without Cost (Supplement)" (Doc. 20).

     Regarding Petitioner's Motion for Appointment of Counsel, there is no constitutional right to counsel in a habeas proceeding.  *Bonin v. Vasquez*, 999 F.2d 425, 429 (9th Cir. 1993).  "Indigent state prisoners applying for habeas corpus relief are not

1   entitled to appointed counsel unless the circumstances indicate that appointed counsel is
2   necessary to prevent due process violations." *Chaney v. Lewis*, 801 F.2d 1191, 1196
3   (9th Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987).  However, pursuant to Rule 8(c) of
4   the Rules Governing Section 2254 Cases in the United States District Courts, "[i]f an
5   evidentiary hearing is warranted, the judge must appoint an attorney to represent a
6   petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Even
7   if an evidentiary hearing is not warranted, a district court has discretion to appoint counsel
8   for a habeas petitioner when "the interests of justice so require."   18 U.S.C. §
9   3006A(a)(2)(B).

10          The undersigned does not find that the interests of justice require the appointment
11   of counsel in this untimely case.  Petitioner has failed to show that the complexities of the
12   case are such that denial of appointed counsel would amount to a denial of due process.
13   Moreover, Petitioner's filings with the Court indicate that Petitioner understands the
14   issues and is capable of presenting his arguments to the Court.  *See LaMere v. Risley*, 827
15   F.2d 622, 626 (9th Cir. 1987) (affirming the denial of the appointment of counsel where a
16   petitioner's pleadings demonstrated a good understanding of the issues and an ability to
17   present contentions "forcefully and coherently").  In addition, the record is adequately
18   developed and the undersigned does not find that an evidentiary hearing is necessary.
19   For these reasons, the undersigned recommends that the Court deny Petitioner's request
20   to "renew" his Motion for Appointment of Counsel (Doc. 8).

21          Petitioner states that his request to "renew" the motions/pleadings relating to
22   discovery are "essential for Petitioner to develop fully his [ineffective assistance of
23   counsel] claim."  (Doc. 36 at 49).  As the undersigned recommends that the Petition be
24   dismissed with prejudice because it is time-barred, and Petitioner's request for discovery
25   does not relate to the timeliness of the Petition, the undersigned recommends that the
26   Court deny Petitioner's request to "renew" the motions/pleadings filed as Docs. 14, 16,
27   18, and 20.

28

## IV.  CONCLUSION

Based on the foregoing reasons, the undersigned recommends that the Court deny and dismiss with prejudice the Petition on the basis that it is time-barred.

Accordingly,

**IT IS RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because dismissal of the Petition is justified by a plain procedural bar.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 25th day of August, 2015.

Eileen S. Willett
United States Magistrate Judge